WILLIAM TOWLERTON, Plaintiff in Error, *vs.* ALFRED D. DA-VIDSON, Defendant in Error.

ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

Plaintiff brought ejectment alleging title in fee in himself, and that Defendant wrongfully withholds possession. Defendant admitted title in Plaintiff, and that he, Defendant, was in possession of the premises, and set up as a defence, that while one H. was owner of a certain lot, including the premises, it was verbally agreed between Plaintiff, Defendant, and one P., that the latter should obtain title to the lot, and deed a part to Plaintiff, and to Defendant the premises in question. That afterward Plaintiff fraudulently obtained title to the lot, and refused to deed to Defendant the premises in question. No fraud was proved. *Held*, that the promise of the Plaintiff, being verbal and without consideration, was void.

Points and Authorities of Plaintiff in Error.

I.—The Court erred in holding the agreement between Dr. Paterson and Towlerton void as being by parol.

Towlerton had partly performed by entering into possession and making improvements, and paid in work and taxes some of the consideration money. That takes the case out of the statute on the ground of part performance. *Seager vs. Burns,* 4 *Minn.,* 141.

II.—The final agreement of Davidson was not without consideration as is assumed as a conclusion by the Court below.

Points and Authorities for Defendant in Error.

1.—The agreement between Paterson and Towlerton was void, being by parol and without consideration. *Mackubin vs. Clarkson,* 5 *Minn. Rep., p.* 253.

II.—Was Paterson agent of Towlerton?

If he was not, this agreement between Davidson and Paterson has no effect. The Court does not find that he was. Plaintiff, in his points, says Paterson swears so.

"Agency cannot be proved by the declarations of the pretended agent." 5 *Minn. Rep., p.* 343.

III.—Towlerton never sought title nor tried to obtain it from Heely or Sweet, and is in no worse situation than when the title was in them.

IV.—Courts are unwilling to interfere to enforce specific performances when the injured party may be indemnified in damages. 5 *Minn. Rep. p.* 191-92.

V.—Davidson, who has paid the full price for the whole lot, should not be compelled to Deed a part to Towlerton, without consideration.

ALLIS & PECKHAM, Counsel for Plaintiff in Error.

ROBT. P. LEWIS, Counsel for Defendant in Error.

*By the Court*—ATWATER, J.—This was an action of ejectment brought by the Defendant in Error to recover possession of part of lot two in block four in Paterson's addition to St. Paul. The Plaintiff alleged title in fee in himself, and that the Defendant wrongfully and unlawfully withheld possession from him.

The answer admitted the principal allegations of the complaint, and set up a verbal promise on the part of Davidson to deed him forty by fifty feet of said lot, at a time when Davidson had not title, but was negotiating for the same, and also such promise from Andrew B. Paterson, a former owner of the lot, and who was also negotiating for the title for the purpose of selling the same to Plaintiff and Defendant. The answer also alleges that the Plaintiff fraudulently obtained the legal title from the holder thereof, and refused to convey the portion of the lot to Defendant as he had agreed to do. The action was tried by the Court, and judgment given for the Plaintiff.

Substantially these facts appear from the finding of the Court, viz:

That in the year 1851 one Andrew B. Paterson was the owner of the lot in question, and that on the 24th of October of the same year, the said Paterson conveyed said lot by warranty deed to one William Heely, which deed was not recorded until April, 1859. That the Defendant went into posses-

sion and actually occupied that portion of said premises claimed by him, some years previous to 1859, and paid the taxes and made improvements thereon. That being desirous of purchasing forty by fifty feet of said lot, he applied to said Paterson, who appeared by the records to be the owner thereof, to purchase the same, but was informed by said Paterson that he supposed he had previously sold said lot.

That it was then verbally agreed between the said Defendant and said Paterson, that in consideration of the discovery by said Defendant that the title to said lot two was by said records in said Paterson, the said Paterson should thereafter convey to said Defendant the said forty by fifty feet.

That at or about the time last aforesaid, the said Paterson verbally contracted with the Plaintiff, who knew the condition of said Paterson's title, to sell Plaintiff the west half of said lot two for $600, and in pursuance of said agreement the Plaintiff went into possession of said west half, and made improvements thereon to the value of $1000.

That in February, 1860, the said Paterson and wife conveyed the said west half to the wife of said Plaintiff. That Plaintiff at this time knew of the condition of Paterson's title, and of his agreement with Defendant, and of Defendant's possession of said forty by fifty feet. That upon taking said deed to the Register's office for record, it was for the first time discovered that Heely's deed had been recorded.

That thereupon said Paterson and the Plaintiff employed one Sweet to negotiate with and purchase of Heely the whole of said lot two, and take the deed thereof in the name of said Paterson, and that Sweet received authority from Paterson to draw on him for $400 the purchase price of said lot.

That on closing the purchase Heely deemanded $100 more, which Sweet advanced, and took the deed in his own name for security. This deed was recorded in Ramsey County, June 11, 1860.

That afterwards with the knowledge and consent of the said Paterson, the said Sweet and wife, on being paid the said $100 advanced as aforesaid, did, on the 8th of December, 1860, convey to said Plaintiff the whole of lot two, by warranty deed, which deed was recorded December 17, 1860. That

during all the time aforesaid, and until the execution of the last named deed the said Plaintiff well knew all the facts aforesaid, and verbally promised the said Paterson that he would convey the said forty by fifty feet to the Defendant as soon as the title to the whole of said lot should be complete and perfect in the Plaintiff.

That said forty by fifty feet is situated on the east half of lot two, and is now in the actual possession of Defendant, who has placed improvements thereon of the value of $175, a small part of which have been put thereon, since the said promise of the said Paterson to said Defendant, and upon the faith thereof. That said Plaintiff has not conveyed said forty by fifty feet, but retains the legal title to the whole of said lot, and has never been requested by Defendant to execute any conveyance thereof.

That after Plaintiff obtained title to the premises, he authorized Paterson to offer Defendant $100 for a release of his claim upon the lot rather than have any trouble about it, which Defendant refused to accept. That no demand of, or notice to quit the said premises was served or made on said Defendant previous to the commencement of this action.

Upon this state of facts, we think the judgment of the Court below was correct. When the Defendant took possession of the premises claimed by him, he was a trespasser thereon, without a shadow of title, or any right of possession whatever. His subsequent agreement with Paterson for the purchase of the premises, added nothing to his legal or equitable rights, for Paterson had no more interest in the premises than the Defendant, nor any right whatever to convey the same, of which fact the Defendant had notice. The discovery by the Defendant that the title was of record in Paterson, could constitute no good consideration, since Paterson was well aware he had sold the lot, and it was a matter of no consequence to him whether the purchaser had recorded his deed or not, as he was bound by the conveyance, as well as every party having actual knowledge of the same, so far as acquiring any interest in the premises was concerned. Nor could the voluntary payment of taxes upon the premises by Defendant, constitute any consideration for the promise by

Paterson, since Paterson was in no manner liable for the taxes, and it could be of no interest to him whether the taxes were paid or not. So far, therefore, as the promise by Paterson is concerned, to convey to Defendants this 40 by 50 feet, it was verbal and without consideration, and absolutely void. It is also to be observed in this connection, that the Defendant did not enter into possession under this agreement, but was in possession some years previous to 1859. It does not appear from the finding of the Court, that the Defendant actually did anything with regard to the premises, upon the faith of the promise of Paterson, with the exception of a small part of the improvements, and it cannot therefore be claimed that the case is an exception to the rule, on the ground of part performance. There was, in fact, nothing to be performed by Defendant on the strength of this promise to convey, since the alleged consideration, such as it was, had already been paid and executed by Defendant.

Nor is the Defendant in any better position so far as the promise of Davidson is concerned. It does not appear that Davidson ever promised the Defendant himself, that he would deed the 40 by 50 feet to him, but promised Paterson that he would do so. This promise to Paterson could avail the Defendant nothing, unless Paterson was his agent, or he was in some manner privy to it. The Court below has not found that Paterson was such agent. But even had this promise been made to Defendant directly, he could not have enforced it against the Plaintiff, since it is verbal and no consideration for the same is shown.

The Defendant in his answer, claims that it was agreed between him and Plaintiff and Paterson, that the lot should be conveyed to said Paterson by Heely, and that Paterson should deed to Plaintiff and Defendant their respective interests. The Court does not find this allegation to be true, but even taking this statement of the Defendant to be correct, and that the title had vested in Paterson, could the Defendant have enforced a conveyance from Paterson? We think not, since, as above stated, the agreement on the part of Paterson was void. The Defendant was in no worse position, from the fact that Sweet obtained the title, than he would

have been had it been conveyed to Paterson, since it appears that the latter consented to the conveyance by Sweet to Davidson; and had Paterson, upon receiving title, conveyed himself the whole to Davidson, the Defendant would have had no redress. Taking, therefore, the allegations of the Defendant in his answer as true, he fails to make a case entitling himself to the relief which he claims.

There are some cases in which the rule of law applicable to this case operates with peculiar hardship. We cannot regard this, however, as one of that kind, and do not think the Defendant discloses equities which entitle him to any great degree of sympathy. The improvements which he has placed upon the premises, are shown to be worth $175. He was not led to make these improvements from any mistake of fact or of law, respecting the premises, nor from any inducements or promises made to him, by any one claiming title, or having a show of right to deal with the *locus in quo*. By his own showing he was a naked trespasser, using the property of another without leave or license, and assuming, with his eyes open, all the risks of the undertaking. The fact that his neighbors may have deceived him, or violated their faith in dealing with the same property, does not increase his equities. Both parties are struggling to obtain possession of the same property; if the Plaintiff by the use of superior diligence, (no fraud is shown), has succeeded in obtaining the legal title, and has paid a good consideration therefor, this Court has no power to destroy his title, or oust him from his rights accruing therefrom.

The judgment below must be affirmed.