## CANNON FALLS HOLDING COMPANY v. HILMA C. PETERSON AND ANOTHER.[1]

October 16, 1931.

No. 28,606.

*Bentley & Christianson,* for appellant.
*T. R. Johnson* and *Albert Johnson,* for respondents.

STONE, J.

In this action by a holder for value but not in due course against the makers of two promissory notes, the verdict was for defendants. Plaintiff appeals from an order denying its motion for judgment notwithstanding the verdict or a new trial.

The facts are simple and for the most part not in serious controversy. Defendants are respectively the widow and a son of Mr. P. A. Peterson, late a resident of Cannon Falls, who departed this life August 20, 1924. For some years he had been president of the Peoples State Bank of Cannon Falls and treasurer of the Scandinavian Benevolent Society. After his death it was discovered that in the latter capacity he was $3,850 short in his accounts. It may

[1]Reported in 238 N. W. 487.

be assumed that the loss was attributable to unwise and unauthorized investment of the trust funds rather than to wilful misuse of them. Mr. A. J. Lee, then acting cashier of the Peoples State Bank, brought the matter to the attention of the family of the deceased. These defendants, together with a daughter of the deceased, thereupon agreed to give the bank their note for the amount if it would at once make good the liability.

That agreement was consummated December 1, 1924, by the execution to the bank of a note for $3,850, signed by these defendants and the daughter, and by the bank's payment to the benevolent society of $3,850 in cash to make good the shortage and thereby prevent what it was so highly desirable to all concerned to prevent—any reflection upon the good name of the Peterson family and any impairment of the standing of the bank itself in the community.

When the original note matured, December 1, 1925, two were taken in renewal, one for $3,850, covering the principal, and another for $290, representing accrued interest. These notes were signed only by the present defendants.

Thereafter the Peoples State Bank of Cannon Falls was reorganized and became the Security State Bank of that city, and the latter succeeded by indorsement and delivery to the ownership of the notes. Certain of the assets of the old bank had been guaranteed by nine of its stockholders. In making good that guaranty they finally had to take over the notes in suit, the transfer being evidenced by indorsed assignment. The present plaintiff is a corporation, organized, it is said, as a holding company to take over and liquidate some of the slow or frozen assets of the Peoples State Bank. Anyway, it has become, by indorsement and delivery, the owner of the notes. The facts as thus far stated are not in controversy.

■ There was an attempted defense on the ground of alleged fraud perpetrated by Mr. Lee, then acting cashier of the Peoples State Bank, inducing the execution of the original note. He was apparently a long-time and trusted friend of the Peterson family

and was chosen to be administrator of the estate. We assume for present purposes that the evidence sufficiently discloses a confidential relation existing between him and the makers of the first note. One and a principal fraudulent misrepresentation charged to him by defendants is a statement that he as administrator of the estate would pay the notes. That could have been taken to mean, not that he assumed any personal liability, but only that he would pay out of the assets of the estate. The jury was not instructed that this representation, being strictly promissory in nature, would not constitute fraud unless the evidence justified the conclusion that at the time it was made there was no intention on the part of the promisor to perform and so the promise was intentionally deceitful. It was prejudicial error not to so instruct, for in such cases a broken promise alone does not prove fraud.

"It must be made affirmatively to appear that the promisor had no intention to perform at the time the promise was made." Maguire v. Maguire, 171 Minn. 492, 496, 214 N. W. 666, 668, 215 N. W. 522, and cases cited.

The error just dealt with was assigned as such both on the motion for a new trial and on this appeal. It is no answer to say that the alleged representation by Lee that as administrator he would pay the notes was not submitted to the jury. The claim of fraud, as made for defendants, was submitted as a whole. All the statements charged against Mr. Lee were included. The jury would not have concluded otherwise.

■ There went to the jury an issue as to whether the notes in suit were based upon a valuable consideration, or rather, whether the original note was so founded. If it was, the renewal notes were necessarily so. On the faith of the original note and as part of the same transaction, the bank advanced $3,850 of its own money to the benevolent society. That was proved so decisively as not to be open to denial. Such detriment suffered by the promisee is always a valuable consideration. 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 1750. The bank's act in parting with its money was the consideration for defendants' promise. Am. L. Inst. Restatement

Contracts, § 75. So there was no excuse for submitting to the jury the issue of consideration. Equally without justification by the evidence, there went to the jury a question as to whether plaintiff was the owner of the notes. The affirmative of that appears from the evidence to the point of demonstration.

Another defense pleaded but not proved was that of duress. But it was submitted to the jury—like the two supposed issues just referred to—without protest from or exception by counsel for plaintiff. There is no evidence justifying its submission. We do not overlook testimony of defendant Mrs. Peterson that when she was asked to sign the notes she "stood helpless." That statement was not responsive to any question asked and was wholly a conclusion and as such improper. But there was no motion to strike. Giving it all the weight which it may properly have, it is not sufficient to show duress, that is, such a forced substitution of the will and purpose of the perpetrator for those of the victim as to constitute what the law recognizes as duress. Brown County Bank v. Hage, 156 Minn. 460, 195 N. W. 275; 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 2848.

Among other things the jury was instructed thus:

"You will remember there was some testimony in behalf of the defendants that at the time the renewal and interest notes were given, those are the notes in suit, it was understood and agreed that the defendants would not be called upon to pay, that it was only a form. *If you find such was the contract governing these notes now in suit, your verdict would be for the defendants under such agreement.*" (Italics ours)

In other words and in plain language, the jury was told that the complete, written contracts, evidenced by the notes, could be abrogated by some oral agreement entered into contemporaneously with their making and covering the same transaction. That is not the law. Skelton v. Grimm, 156 Minn. 419, 195 N. W. 139, and cases cited.

While treasurer of the benevolent society, the late Mr. Peterson was bonded in the usual fashion for the faithful performance of his

duties. That bond was introduced in evidence, and much seems to have been made of it in argument by counsel for defendants. They seem to conclude that because the corporate surety was liable for the shortage made good by the money of the bank it in some way affected the propriety of taking defendants' original note. Such argument is utterly without merit, for the obvious reason that if the surety had made good the shortage, as it was obligated to do, it would have had a right of complete subrogation to the remedies of the benevolent society, the obligee in the bond. That liability could have been enforced to the extent of its unexempt assets against the estate of the deceased treasurer. So far as the resulting embarrassment to the family or the bank is concerned, the complications might have been increased rather than decreased had the surety been called upon for payment. We cannot see how the bond of Mr. Peterson as treasurer of the benevolent society has any bearing upon any of the issues of this case.

All the issues dealt with just above were submitted to the jury (excepting only the matter of the bond) although not open on the evidence. It is error always to submit a case to a jury "upon a point upon which there is no evidence or where the evidence admits of only one reasonable inference." 5 Dunnell, Minn. Dig. (2 ed. & Supp.) § 7174, following Reed v. Lammel, 40 Minn. 397, 42 N. W. 202 (issue of ownership improperly submitted) and the numerous other cases cited. But no exceptions were taken at the time by counsel for plaintiff. Nor were the points saved by proper specifications of error in the motion for a new trial. Therefore they are not open to plaintiff on this appeal. But we have thought it our duty to deal with them as above, not for the purpose of deciding anything, but only to point out a considerable body of familiar and controlling law which ought not to be wholly ignored if there is another trial.

For the reason first above dealt with there must be a reversal.

So ordered.